**The STATE of Ohio, Appellee,**

v.

**ATTAWAY, Appellant.**

[Cite as *State v. Attaway* (1996), 111 Ohio App.3d 488.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950727.

Decided June 5, 1996.

*Fay Dupuis,* Cincinnati City Solicitor, *Terrence R. Cosgrove* and *Lisa Allen,* Assistant City Solicitors, for appellee.

*Charles H. Bartlett, Jr.,* for appellant.

---

GORMAN, Judge.

The defendant-appellant, Willie Attaway, appeals from his conviction for domestic violence in violation of R.C. 2919.25(A). In his sole assignment of error he contends that the evidence presented at trial was insufficient for a finding of guilty. We agree.

On July 2, 1996, at approximately two o'clock in the morning, the arresting officer in this case received an off-duty officer's radio report of domestic violence and responded to 1400 Main Street, where he saw Elaine Brown with Attaway. Brown, who had a swollen and bloody lip and scratches on her neck, was crying and obviously intoxicated. She informed the officer that Attaway had punched, kicked, stomped, and choked her. The officer observed that Attaway, who was sober, had scratches on his neck and a minor lip injury. It is uncontested that Attaway and Brown were living together in the same household at the time of the incident.

Attaway was arrested at the scene. According to the arresting officer, Attaway was sober, cooperative, and said something to the effect that "this happens all the time." The arresting officer did not interpret this as a reference solely to the fact of Brown's intoxication. According to the arresting officer, Attaway did not proffer any other explanation for the injuries both he and Brown had sustained. The arresting officer filed a complaint against Brown for felony domestic violence because of an alleged prior conviction of domestic violence. See R.C. 2919.25(D). The charge, however, was later reduced to a misdemeanor on the state's motion made before trial.

Only Brown, the arresting officer, and Attaway testified at trial. Though called by the state as the prosecuting witness, Brown recanted the statements she had made to the arresting officer at the time of the incident, testifying that her injuries were sustained while she was on a drinking binge and became involved in an altercation with a woman on the street. After the trial judge advised her of her Fifth Amendment rights and declared her a hostile witness to the state, Brown further testified under cross-examination that she had lied to the officer and implicated Attaway because he was trying to get her off the street and away from alcohol. Notwithstanding Brown's recantation, the trial court overruled Attaway's Crim.R. 29 motion made at the close of the state's case. Attaway then testified in his own defense, corroborating Brown's testimony that she had sustained her injuries while involved in a fight with another woman, and that he, Attaway, had intervened in an effort to break it up. Contrary to the testimony of the arresting officer, Attaway testified that he told the police at the

time of his arrest that Brown's injuries were caused by another woman, not by him.

Upon consideration of the evidence, the trial court found Attaway guilty on August 29, 1995, and imposed a one-hundred-eighty-day sentence of confinement. The trial court suspended one hundred sixty-two days, gave Attaway credit for eighteen days, and placed him on one year's probation with the condition that he spend sixty days in home incarceration and have no contact with Brown.

■ The salutary purpose of the domestic violence statute is to impose criminal sanctions upon assaultive behavior even though the relationship between the couple may be marked by cyclical periods of fighting and harmony. In light of the state's burden of proof beyond a reasonable doubt, however, if a purported victim recants at trial, for any one of a variety reasons including threats of reprisal or genuine reconciliation, the state has a difficult task to obtain a criminal conviction. Although proof beyond a reasonable doubt is not proof to the exclusion of any possible doubt, it is, as defined in R.C. 2901.05(D), "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." Furthermore, in considering and comparing all of the evidence, the trial court must be "firmly convinced of the truth of the charge." *Id.*

■ For the trial court to have found Attaway guilty in the present case, it must necessarily have placed more credence in the statements Brown made to the arresting officer than it did in her testimony at trial under oath. Such a determination assumes that statements made contemporaneous with the event, while still under its stress, carry a more substantial guarantee of trustworthiness than testimony given after the fact, subsequent to a period of cooling off in which one has had an opportunity to fabricate. This reasoning is analogous to the justification for the excited-utterance exception to the hearsay rule as embodied in Evid.R. 803(2). The guarantee of trustworthiness for an excited utterance, however, has always been the subject of considerable debate. As noted by Weissenberger in his treatise, the nature of an excited utterance can just as easily lead to the contradictory conclusion that a startling event enhances the possibility for misstatement or misperception. Weissenberger, Ohio Evidence (1996) 361, Section 803.16. See, also, Stewart, Perception, Memory, and Hearsay: A Criticism of Present Law and The Proposed Federal Rules of Evidence, 1970 Utah L.Rev. 1. In this case, not only was Brown, a self-described alcoholic, excited at the time she gave her statement to the arresting officer, she was also, according to her testimony, drunk, agitated, beaten up, and full of anger and recrimination toward Attaway, who was attempting to get her off the street and back home. According to Brown, she initially identified Attaway as her attacker

to the arresting officer so that she could be rid of him in order to get another drink.

We note that the record is bereft of any extrinsic corroborating evidence from which to conclude that Brown's statement to the arresting officer was more credible than her recantation under oath. Although the state points to what it characterizes as differing descriptions given by Brown and Attaway of the woman with whom Brown had allegedly fought, we do not find the descriptions to be tellingly different. Attaway described her as "a short black lady." Brown, who is five feet two inches in height, described her as a "[d]ark skin girl with a curl * * * [a] little bigger than me." Such discrepancy as does exist between these two descriptions is, we think, too thin a basis upon which to reject their testimony outright.

Concededly, the conflict between the testimony of the arresting officer and Attaway concerning whether he attributed the assault to a third person at the time of his arrest afforded the trial court some basis to discredit his testimony. Even so, however, the only evidence arrayed against him consisted of the recanted, uncorroborated testimony of the state's prosecuting witness. His alleged statement at the time of his arrest to the effect that "this happens all the time" can just as readily be interpreted as referring to Brown's alcoholism as to an admission of guilt.

In sum, we hold that the credibility of Brown's first statement, which is otherwise uncorroborated and completely contradicted by her sworn testimony at trial, is so inherently suspect that the statement is insufficient as a matter of law to establish Attaway's guilt beyond a reasonable doubt. Accordingly, we find it unnecessary to address Attaway's ancillary argument that this conviction was contrary to the weight of the evidence.

The judgment of the trial court is reversed, and the defendant is discharged.

*Judgment accordingly.*

HILDEBRANDT, P.J., and PAINTER, J., concur.