DECISION
{¶ 1} Defendant-appellant, Paul H. Collins, appeals from judgments of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of two counts of domestic violence and one count of negligent assault.
 {¶ 2} The present matter was initiated by three separate indictments that were subsequently consolidated for trial. All three incidents involved domestic violence allegations involving appellant and his wife, Barbara Baas Collins. On November 8, 2002, Columbus Police responded to a domestic violence call at the Collins' residence, where Ms. Collins informed officers that she had been assaulted over the past several days by appellant.
 {¶ 3} On December 11, 2002, police again responded to a domestic violence report involving the parties in a parking lot outside a north Columbus bar at 3:45 a.m. Ms. Collins appeared angry and intoxicated and police observed recent bruising, just beginning to swell, around her left eye and cheekbone. Ms. Collins told police that her husband had punched her while she was a passenger in his car, and then left on foot. Worthington Police arrested appellant a short time later.
 {¶ 4} On February 14, 2003, officers again responded to a domestic violence situation involving appellant and his wife, this time at their home at 3264 Rothschild Court, where a neighbor had reported a disturbance. The neighbor described Ms. Collins as pounding on her door at 2:15 a.m., and asking to call the police. After the neighbor called 911 and went back to bed, Ms. Collins again pounded on the door, and the neighbor noticed Ms. Collins' face was bleeding profusely. The neighbor again called 911 and specified that a squad was needed because of the injuries. When police arrived, they found Ms. Collins with severe facial lacerations, including a semi-circular wound that caused a flap of skin to hang down from her cheek. She told police that appellant had hit her but she did not know what he had used to do so. After Ms. Collins was taken to the hospital, police kicked in the front door of the residence and found appellant under a bed upstairs. At the hospital, Ms. Collins told the investigating officer, Detective Whitt of the Dublin Police Department, that her husband had beaten her with a hollow metal bar from a security device used to prop under a door handle and secure a door. At the time of his apprehension on this occasion, appellant told Detective Whitt that it was his wife who had used the metal bar as a weapon and that appellant had merely wrested it from her grasp and thrown it down the basement stairs or out on the back porch. Appellant suggested that any other injuries incurred by Ms. Collins probably resulted from a car accident.
 {¶ 5} Appellant was separately indicted on counts of domestic violence, a violation of R.C. 2919.25 and a felony of the fifth degree, for the November 8 and December 11, 2002 incidents. A subsequent indictment for the February 14, 2003 incident specified one count of domestic violence, one count of violating a protective order, and one count of felonious assault in violation of R.C. 2903.11, a felony of the second degree.
 {¶ 6} The three indictments were consolidated for trial over defense counsel's objection. Ms. Collins recanted on her initial accounts of the incidents and testified at trial that appellant had not intentionally caused her injury, and that her accusations were caused by her anger towards appellant from other causes and her abuse of alcohol and drugs.
 {¶ 7} With respect to the November 8, 2002 incident, Ms. Collins testified at trial that she had had an argument with appellant and that, when she restrained him as he attempted to pack up his possessions and leave the marital residence, he pushed her away and accidentally hit her with his elbow.
 {¶ 8} With respect to the December 11, 2002 incident, Ms. Collins testified that, on that day, she had been drinking heavily and taking medication. She was upset because appellant had not been home for approximately four days and, when he called from a bar at 3:00 a.m. and said he was out of gas, she went to retrieve him, although she was very angry that he had spent money, that they were not in a position to waste, on a drinking binge. When she arrived at the bar, she expressed her anger by ramming his car from all directions with her own vehicle. In the process, Ms. Collins testified, she struck her face on the steering wheel and caused the bruising observed by police. She testified that she later shifted the blame to appellant because she was concerned that police would arrest her for violating her limited driving privileges order, and she hoped to distract the police by shifting blame to appellant.
 {¶ 9} With respect to the February 14, 2003 incident, Ms. Collins testified that she had been binge drinking for ten days prior to the incident and living with her daughter while her husband occupied the marital home. She was driving to get more beer when she saw her husband walking on the street and she picked him up because it was a very cold day. She drank more at her daughter's home and then went to the marital residence, where she woke appellant, who had also been drinking and was difficult to rouse. Appellant twice urinated into a trashcan in the kitchen, the second time splashing urine on Ms. Collins, causing her to become angry. She then picked up the security bar and struck appellant with it in the face, whereupon appellant attempted to wrest it from her grasp and accidentally caused it to strike her face. She stated that, because she was angry, she told the police at the time that appellant did it intentionally.
 {¶ 10} The jury returned a verdict of not guilty on the domestic violence charge arising out of the November 8, 2002 incident; a verdict of guilty on the domestic violence charge arising out the December 11, 2002 incident; and a verdict of guilty on the domestic violence charge arising out of the February 14, 2003 incident. On the felonious assault charge arising out of this last incident, the jury found appellant not guilty, but guilty of the lesser-included offense of negligent assault.
 {¶ 11} The trial court sentenced appellant to a term of 11 months on the December 11, 2002 count of domestic violence, and concurrent terms of 90 days and 12 months respectively on the domestic violence and negligent assault counts arising out of the February 14, 2003 incident. The court ordered that the two felony terms would be served consecutively. Appellant has timely appealed and brings the following two assignments of error:
First Assignment of Error
There was insufficient evidence to support the guilty verdicts and the verdicts were against the manifest weight of the evidence, thereby, depriving Appellant of his due process protections under the state and federal Constitutions.
Second Assignment of Error
The prosecutor improperly mischaracterized testimony during closing argument, thereby denying Appellant due process under the state and federal constitutions.
 {¶ 12} Appellant's first assignment of error asserts that the guilty verdicts were against the manifest weight of the evidence and supported by insufficient evidence as a matter of law.
 {¶ 13} The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. As to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., citing Black's Law Dictionary (6th Ed. 1990) 1433. A determination as to "[w]hether the evidence is legally sufficient to sustain a verdict is a question of law." Thompkins, at 386. The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) Jackson v. Virginia (1979), 443 U.S. 307, 308. A reversal based on insufficient evidence has the same effect as a not guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant."Tibbs v. Florida (1982), 457 U.S. 31, 41.
 {¶ 14} As opposed to the concept of sufficiency of the evidence, the court in Thompkins noted, at 387, that:
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief." (Emphasis added.) Black's, supra,
at 1594.
When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * *
 {¶ 15} We will separately review the evidence relating to the two different incidents for which appellant was convicted, commencing with the February 14, 2003 incident. Because of Ms. Collins' recantation of her prior statements to police and testimony in favor of appellant at trial, the prosecution's evidence consisted of Ms. Collins' past recorded statements made on the night of the incident, the statement of responding officers, and the photographic evidence of the very severe injuries suffered by Ms. Collins that night.
 {¶ 16} Appellant seeks to discount the reliability of the statements made by Ms. Collins when interviewed by the police on the night of her injuries. Appellant relies on the case of Statev. Attaway (1996), 111 Ohio App.3d 488, in which the appellate court reversed a domestic violence conviction based on an out-of-court statement, finding that the out-of-court statement was so inherently untrustworthy that it should be given less credence than the purported victim's exculpatory in-court sworn testimony. We find that Attaway is distinguishable from the present case, particularly because of the existence of extensive corroborating evidence.
 {¶ 17} Although the taped interview of Ms. Collins amply corroborates her subsequent account that she was heavily intoxicated at the time of the incident, and the statement contains some irrational or incomprehensible passages, there are repeated and consistent segments in which Ms. Collins recounts appellant's assault upon her with a metal bar. The jury also had before it appellant's own videotaped statement on the night of his arrest, which is, in almost all respects, inconsistent with the exculpatory testimony that Ms. Collins eventually provided at trial. Most significantly, appellant vehemently denied any struggle over the metal bar and suggested that the injuries suffered by Ms. Collins were caused by a car accident she suffered after she left the house. This is directly contradictory to her testimony that the two wrestled over the bar and she was accidentally struck. Appellant's statement was also dramatically inconsistent with responding officers' testimony that they arrived at the residence and discovered Ms. Collins bloody, staggering, and with a large flap of skin hanging down from her cheek. There was no indication that she had left the vicinity or been involved in a car accident.
 {¶ 18} The most telling evidence with respect to the February 14, 2003 incident, however, is the massive scale of injuries suffered by Ms. Collins. The photographs are present in the record and reveal that she suffered several violent blows with an object that left circular or semi-circular wounds, including one large enough to cause a substantial flap of skin to hang free from her face. The testimony of emergency room personnel corroborated the extent of the lacerations and also confirmed the presence of facial fractures from the impacts. The scale of injuries suffered by Ms. Collins is absolutely inconsistent with any account by herself at trial or by appellant on the night of the incident regarding the nature of the blows struck. The only account consistent with the documented injuries suffered is the one that she gave on the night in question when interviewed by police at the hospital. With this evidence before it, the jury has sufficient evidence to support the verdict as a matter of law, and was free to find the conflicting evidence less than credible. We accordingly find that the jury's verdict, with respect to the February 14, 2003 incident, is neither supported by insufficient evidence nor against the manifest weight of the evidence.
 {¶ 19} We now turn to the December 11, 2002 incident. The prosecution's evidence was less extensive with respect to these charges. They consisted of Ms. Collins' statements at the scene, admitted by the trial court as excited utterances, and investigating officers' description of her facial bruises. Here again, the nature of her injuries, including black eyes and facial bruising, was more consistent with her initial account of having been beaten by appellant than with having suffered facial injuries while ramming appellant's car with her own in a fit of rage. While the evidence is somewhat less well developed than it is with respect to the February 14, 2003 charges, we find that it is sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, nor enough for this court, sitting as a thirteenth juror, to disagree with the jury's resolution of the conflicting evidence.
 {¶ 20} We accordingly find that appellant's convictions with respect to both the February 14, 2003 charges and the December 11, 2002 charges to be supported by sufficient evidence and not against the manifest weight of the evidence, and appellant's first assignment of error is, accordingly, overruled.
 {¶ 21} Appellant's second assignment of error asserts that prosecutorial misconduct occurred during closing arguments, when the prosecutor mischaracterized the testimony of Ms. Collins on cross-examination. The following passage is at issue:
and then if you'll recall, she testified a little bit about her recollection of the April 6th interview with detective whitt. Her language in that — her recollection of her language was very vivid. She stated that she tried to block the blows; that he bludgeoned me with the pole over and over and over; that the defendant — that he was standing over me ramming me with it.
Mr. Turner: Objections, your honor. May we approach?
The Court: This is for the jury to understand or to recall from your own individual and collective memories as to whether this is an accurate statement of counsel — of the witness.
Mr. Turner: Your honor, may we approach?
The Court: Overruled.
Ms. Duvall: Ladies and Gentlemen, I'm referring to when I was refreshing her memory concerning — or when I was talking about her memory of her conversation with detective whitt on the 6th. And she also stated that she recalled telling him that he struck her with the end of it. This was not an accident, according to Mrs. Collins. This was a bludgeoning of her by the defendant.
(Tr. at 558-559.)
 {¶ 22} The prosecutor's characterization of Ms. Collins' testimony was arguably misleading by attributing certain details to her that were in fact furnished by the prosecution through questioning:
Q. And you told detective whitt that he hit me with the door stop at the front door; correct?
A. You know, I don't recall the whole conversation, but I'm sure that I did tell him these things because I was, once again, drunk and angry.
Q. And you also told detective whitt that the defendant had been telling you that he came at you with the pole; correct?
A. Well, then, I lied.
Q. But you told detective whitt that at that time?
A. I don't recall.
Q. And you also told detective whitt that if I tried to protect myself, that you could have gone at him with the pole, but that he's a big man; correct?
A. I Don't recall that. and, once again, if I did tell him that, I lied.
Q. And you told detective whitt that you were angry about the urine in your eyes and your mouth and that the next thing you remember, you were in front of the front door; correct?
A. I Was angry about the urine and stuff splashing everywhere, but I don't recall the other statement. And I could have told him that because I was, once again, very angry.
Q. And you told detective whitt during the april conversation that you tried to block yourself, correct, from the defendant's blows?
A. Don't recall.
Q. In fact, you told detective whitt during that conversation that he bludgeoned me with the pole over and over and over, didn't you?
A. I Could have made it sound that way, yes.
Q. You told detective whitt that the defendant was standing over you and he was ramming you with the pole over and over and over, didn't you?
A. In April, Yeah, I Probably did.
Q. And you told him that you were — he was standing over top of you, jamming you with the pole; correct?
A. Yes. Yeah.
Q. And that the defendant was striking you with the end of it?
A. I don't know what i told him on April 26th exactly, totally, to the tee, if that's what you're referring to, because I was extremely, extremely intoxicated.
(Tr. at 374-376.)
 {¶ 23} It is accurate to say that the prosecutor, in saying that Ms. Collins had testified at trial that she recalled telling Detective Whitt that her husband had struck her with the pole, and that it was not an accident, is at odds with her actual trial testimony that she did not recall telling the detective this with such certainty, as she appears at best to admit that she could have told the detective such a version of events.
 {¶ 24} The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper, and, if so, whether they prejudicially affected the substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Loch, Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 43, quoting Smith v.Phillips (1982), 455 U.S. 209. The prosecution will be afforded wide latitude in closing arguments. State v. Jacks (1989),63 Ohio App.3d 200, at 210. Arguments must thus be reviewed in their entirety to determine whether the disputed remarks were prejudicial; for a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice."State v. Williams (1986), 23 Ohio St.3d 16, at 20. Ultimately, the test for prosecutorial misconduct is whether the conduct deprived the defendant of a fair trial. State v. Apanovitch
(1987), 33 Ohio St.3d 19, at 24.
 {¶ 25} The prosecutor's comments in the present case arguably mischaracterized one aspect of the alleged victim's testimony on cross-examination. Given the general vagueness of this aspect of her testimony, the extent of that mischaracterization is rather nebulous, since the comments blur the distinction between Ms. Collins' testimony at trial and her taped statement to police at the hospital. Viewed as a whole, the prosecution's statements during closing argument are, if for the sake of argument taken as improper, not particularly inflammatory and cannot be said to have deprived appellant of a fair trial. We accordingly find that no prejudicial prosecutorial misconduct occurred at trial, and appellant's second assignment of error is, accordingly, overruled.
 {¶ 26} In summary, appellant's first and second assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are affirmed.
Judgments affirmed.
Bowman and Klatt, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.