OPINION *Page 2 
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant, James Pallai, Jr., appeals the decision of the Youngstown Municipal Court that found Pallai guilty of one count of domestic violence, in violation of R.C. 2919.25(A). Pallai argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence because the victim recanted her original statements to the police.
 {¶ 2} Because sufficient evidence supports Pallai's conviction, and the conviction was not against the manifest weight of the evidence, the judgment of the trial court is affirmed.
 Facts {¶ 3} Pallai lived with his fiancée, Lisa Murray, and his son, James Pallai, III, in Youngstown, Ohio. On July 17, 2007, Murray called the police to report that Pallai had assaulted her. Officers responded to the scene, took Murray's statement that "he hit me open hand across the left ear," and arrested Pallai for domestic violence.
 {¶ 4} The following day, Murray went to the police station to make a written statement describing what Pallai had done to her. Murray stated that Pallai had been "drinking for 3 days nonstop," that he was harassing his neighbor, his son and Murray, and that he only gets into trouble when he is drunk. Murray stated that she did not want him "to go to jail for a long time" but that she wanted him "to get alcohol treatment." Murray also wrote in her statement, "I told the police he hit me open handed across left ear and I wanted him taken away because he had been warned by police 2 times already and he still kept it up."
 {¶ 5} The case was scheduled for a bench trial, to take place on October 4, 2007. Prior to the trial, Pallai filed a motion to dismiss. Pallai's motion included a sworn affidavit in which Murray stated that she only filed the police report because she wanted Pallai to stop drinking, and that her over-sensitivity is what led her to file the report. Murray neither confirmed nor denied that Pallai hit her, but did state that she did not fear for her safety *Page 3 
and that she does not feel threatened by Pallai.
 {¶ 6} At trial, the State called Murray as a witness. Murray testified that Pallai had been fighting with his neighbor for an extended period during the day, and that neither Murray nor Pallai's son could convince Pallai to calm down. Murray testified that she was not sure how much Pallai had had to drink, and that she did not know if it was Pallai's drinking or his anger that caused him to act the way he did that day. Murray testified that she wanted the police to take Pallai "for a couple of days so he could cool off and calm down," and that her neighbor gave her the idea of calling the police on a domestic violence claim in order to convince the police to make the arrest. Murray said that she wrote the additional statement the next day because she felt pressured by personnel in the police station to do so.
 {¶ 7} Detective Sergeant Steve Schiffhauer testified that Murray had been tentative about writing the statement at the police station because she feared retaliation by Pallai.
 {¶ 8} Pallai's son testified that he came home shortly before the police arrived. He testified that he and Murray called the police because they could not get Pallai to calm down. The son testified that he did not see Pallai strike Murray. He stated that he did not know if Pallai had been drinking.
 {¶ 9} Officer Brad Ditullio, the officer who responded to the domestic violence call, testified that Pallai's son said Pallai had been drinking all day. Officer Ditullio testified that Pallai appeared to be intoxicated at the time of arrest, as he was yelling, slurring his speech, and smelled of alcohol. Officer Ditullio testified that Murray stated that she and Pallai had "had a verbal altercation the whole day but this time it escalated to him slapping her." Ditullio testified regarding Murray's state at the time of Pallai's arrest:
 {¶ 10} "Q: Did you observe any injuries to Ms. Murray?
 {¶ 11} "A: I believe her ear was red, that's all and her face was red because she was crying.
 {¶ 12} "Q: Was her ear the same color red as her face?
 {¶ 13} "A: Pretty much, yes. *Page 4 
 {¶ 14} After direct and cross examination of the State's witnesses, the State moved to admit Murray's written statement in the police's Domestic Violence Report, Murray's Voluntary Statement of Victim, and Murray's recanting Affidavit into evidence. The defense offered no objection, and the court admitted the documents. Pallai did not present any witnesses.
 {¶ 15} Upon Pallai's Rule 29 Motion to Dismiss for insufficient evidence, the trial court found the evidence to be sufficient as a matter of law, and enough to convince the court beyond a reasonable doubt that Pallai was guilty, despite Murray's recantation. On October 24, 2007, the trial court sentenced Pallai to sixty days incarceration, three years of intensive probation supervision, and ordered Pallai to attend at least two alcohol treatment support group meetings each week, and submit to random drug and/or alcohol screens. Pallai's sentence was stayed pending this appeal.
 Sufficiency of the Evidence {¶ 16} In his first assignment of error, Pallai argues:
 {¶ 17} "The State of Ohio failed to introduce sufficient evidence at trial to prove beyond a reasonable doubt that Defendant-Appellant James Pallai, Jr. is guilty of domestic violence, thereby violating Mr. Pallai's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution."
 {¶ 18} Pallai argues that his conviction for domestic violence is not supported by sufficient evidence because Murray recanted her original statements and because there was no corroborative evidence of injury.
 {¶ 19} The test of sufficient evidence is "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 175 485 N.E.2d 717. The court does not examine the credibility of the witnesses, nor does it weigh the evidence in this process. Id.;State v. Goff, 82 Ohio St.3d 123, 139, 1998-Ohio-369, 694 N.E.2d 916. The trial court's decision should only be reversed if the "appellate court finds that reasonable minds could not reach the *Page 5 
conclusion reached by the trier of facts." State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492 (superseded by state constitutional amendment on other grounds). Whether the prosecution presented sufficient evidence is a question of law. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In our review of sufficiency of the evidence, we must "assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins at 390 (Cook, J., concurring).
 {¶ 20} To convict Pallai of domestic violence in violation of R.C. 2919.25(A), the trial court had to find that Pallai had knowingly caused or attempted to cause physical harm to a family or household member. Murray's status as family or household member was uncontested. Physical harm includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Under R.C. 2901.22(B), someone acts knowingly, "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 21} Pallai relies heavily on the First District's decision inAttaway in support of his argument against sufficiency of the evidence.State v. Attaway (1996), 111 Ohio App.3d 488, 676 N.E.2d 600. The court in Attaway held that a domestic violence conviction was based on insufficient evidence because the victim's original and subsequently recanted statement was "so inherently suspect that the statement [was] insufficient as a matter of law." Attaway at 491. First we must note that Attaway was a holding limited to the specific facts of the case, and further limited in subsequent cases within that district. State v.Pettit (Jan 15, 1999), 1st Dist. No. C-980261, at *4 ("Attaway does not stand for the blanket proposition that any out-of-court statement by a victim of domestic violence * * * when contradicted by the victim at trial and not otherwise corroborated, is legally insufficient to support a conviction.").
 {¶ 22} Secondly we must note that the opinion in Attaway predated the Ohio Supreme Court opinion of Thompkins, which solidified the distinction between sufficiency and manifest weight analyses.Attaway appears to be one of those cases that mixes the two analyses, as did many Ohio decisions prior to the clarification in theThompkins *Page 6 
decision. Furthermore, although this court would be loath to confuse coincidence with causation, we cannot help but note that the First District has not cited or relied upon Attaway in any of its cases since its holding in Petit.
 {¶ 23} Thus although the First District's decision in Attaway does involve the "inherently suspect" concept in its sufficiency of the evidence analysis, we see no reason to depart from Thompkins'
instructions on sufficiency analysis in domestic violence cases. The question is whether the evidence, if believed, would be enough to satisfy all elements of the crime charged beyond a reasonable doubt. Our role in the sufficiency analysis is not to decide whether or not the evidence is inherently suspect: we are to take it as true, and must not consider witness credibility in our analysis.
 {¶ 24} Pallai also relies on this court's decision in Dotson in support of his argument. State v. Dotson, 7th Dist. No. 05 CO 28,2006-Ohio-1093. However, Dotson is distinguishable from the issues we address in this case. The crux of the case in Dotson was that the only evidence presented was a report of "pushing" and "pulling," which the majority noted could be as little as a nudge or as much as knocking a person across the room. Dotson at ¶ 14. The evidence was insufficient because no evidence was produced to specify what kind of physicalcontact occurred, and thus nothing was provided to prove the element of physical harm. Moreover, the majority noted in Dotson that issues of credibility from recanted witness statements would only be addressed in a manifest weight analysis. Dotson at ¶ 15.
 {¶ 25} In this case, there were in essence two versions of what transpired proposed by the parties and supported by evidence at trial. First, the testimony of Sergeant Schiffhauer and Officer Ditullio and the written statements of Murray indicate that Pallai hit Murray, and Murray recanted her statements because she did not want to make Pallai angry. Murray's subsequent affidavit and testimony at trial indicate that Murray lied about being hit by Pallai in order to convince the police to take him away, and Murray recanted her statements because they were not true.
 {¶ 26} Murray's original verbal and written statements about the incident are substantive evidence. The record does not reflect that any of Murray's statements were *Page 7 
excluded, nor does it reflect that any of Murray's statements were limited to use for impeachment purposes. We therefore consider all of such evidence. Because we are not to weigh evidence or examine credibility in our sufficiency analysis, and because we are to view the evidence in a light most favorable to the prosecution, we take as true the State's evidence in support of its version of events.
 {¶ 27} Therefore the evidence in the light most favorable to the prosecution indicates that Pallai hit Murray across her left ear with his hand while Pallai was in an angered state, and that Murray recanted in a fashion typical to victims of domestic violence. Such evidence is sufficient to convince a reasonable trier of fact that Pallai knowingly caused Murray physical harm. Pallai's first assignment of error is meritless.
 Manifest Weight of the Evidence {¶ 28} In his second assignment of error, Pallai argues:
 {¶ 29} "The trial court's verdict finding Defendant-Appellant James Pallai, Jr. guilty of domestic violence is against the manifest weight of the evidence in violation of Article IV, 3(B)(3) of the Ohio Constitution."
 {¶ 30} Pallai argues that his conviction is against the manifest weight of the evidence because Murray's original statements were the only evidence of domestic violence; statements which were recanted.
 {¶ 31} Where sufficiency of the evidence is a question of law, manifest weight of the evidence is about the evidence's credibility and "its effect in inducing belief." Thompkins at 387. When this court conducts a manifest-weight analysis, it weighs all of the evidence and reasonable inferences, considers the credibility of each witness, and determines whether the fact-finder clearly lost her way in resolving conflicts in the evidence to the point that she "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. The manifest-weight analysis is a broader inquiry into the original trial, but only allows for a reversal in exceptional circumstances. Id. This is because the trier of fact was in the best position to determine the credibility of the witnesses and the weight due to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. Thus the reviewing *Page 8 
court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact "unless it is patently apparent that the factfinder lost its way." State v. Woulard,158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, at ¶ 81.
 {¶ 32} In this analysis we now weigh the versions rather than favoring the State's version of what transpired. The evidence supporting Pallai's conviction is Murray's original statement and police testimony of her statement. Further evidence provided by police included their observations of the circumstances surrounding Murray's statement, including the demeanor of Murray and Pallai, and the observation that Murray's ear was red. The evidence against Pallai's conviction is the victim's denial of her original statement, both in an affidavit and in her trial testimony. Further evidence against Pallai's conviction is Pallai's son's testimony that he had witnessed the incident and did not see Pallai hit Murray.
 {¶ 33} Both Murray and Pallai's son testified consistently at trial, though their statements regarding Pallai's intoxication contradicted other testimony and evidence. Murray asserted in her written statement that Pallai had been drinking nonstop for three days. At trial Murray claimed she did not know how many drinks Pallai had consumed, and did not know if he was drunk. Pallai's son testified that he did not know at the time of the incident if Pallai had been drinking. Officer Ditullio testified that Pallai's son stated that Pallai had been drinking. The Officer further testified that Pallai was visibly intoxicated and smelled of alcohol.
 {¶ 34} Pallai argues that the lack of corroborative physical evidence in this case weighs against his conviction. However there is some corroborating evidence in Officer Ditullio's observation that Murray's ear was red. Pallai argues that Murray did not have signs of injury the following day, and thus lacked corroborative physical evidence. Given that Murray's original domestic violence report alleged that Pallai hit her open-handed in the ear, a red ear would be consistent with such contact. A slap, even one that does not result in lingering evidence of physical trauma, fits within the definition of physical harm. To require Murray to exhibit symptoms of more severe injury in order to qualify the event *Page 9 
as physical harm would contravene the plain meaning of the statute. ("* * * any injury * * * regardless of its gravity or duration * * *.") R.C. 2901.01(A)(3).
 {¶ 35} In the end, this case presents a situation where Murray's own credibility is at issue. Either her original statements are false, or her statements at trial are false. There are reasons for her to prevaricate in either situation and either situation is believable. However, as an appellate court, we must defer to the finder of fact on such a credibility question. The trial court was in the best position to view and judge the demeanor of the witnesses, and the trial court in this case found Murray's original statement to be more credible than her recanting statement.
 {¶ 36} Although the evidence seems rather slim in support of Pallai's conviction, the evidence against his conviction is similarly slim. We cannot say that there is evidence in favor of Pallai's defense that weighs heavily against conviction, or that the trial court clearly lost its way when resolving conflicts in the evidence and created a manifest miscarriage of justice. The trial court could have reasonably found Murray's recantation to be unpersuasive. Thus, Pallai's second assignment of error is meritless.
 {¶ 37} Accordingly, as Pallai's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, the judgment of the trial court is affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1