OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, and the parties' briefs. Appellant, James B. Kennedy, appeals the decision of the Youngstown Municipal Court convicting him of one count of aggravated menacing and sentencing him accordingly. On appeal, Kennedy argues his conviction was against the manifest weight of the evidence.
 {¶ 2} Upon review, Kennedy's argument is meritless. Resolution of this case hinged on credibility determinations that were best made by the trial court as fact-finder. The trial court did not clearly lose its way so as to create a manifest miscarriage of justice. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 3} On August 24, 2007, Youngtown police responded to calls by Victor Clinkscale, Sr., alleging that Kennedy had driven past his house several times and threatened him, both verbally and with a firearm. As a result of those incidents, Kennedy was arrested and charged by complaint with one count of aggravated menacing, a first degree misdemeanor, pursuant to R.C. 2903.21. He pleaded not guilty and the case proceeded to a bench trial before the Youngstown Municipal Court on January 7, 2008.
 {¶ 4} At trial, Clinkscale testified that prior to the incidents in question, a fight had occurred involving Clinkscale's son, Kennedy's son and several other boys. Clinkscale testified he was present during part of this fight; that someone struck him in the head; and that when he struck back, he hit Kennedy's son in the mouth, injuring him. Clinkscale said the first time he saw Kennedy was when the police came to take a report about that fight. Clinkscale claimed he does not own any firearms because he is under a disability.
 {¶ 5} Turning to the menacing incidents, Clinkscale testified that on August 24, 2007, he was sitting on his front porch with his four-year-old grandson, when he saw Kennedy ride by on his motorcycle. Clinkscale said that a silver or gray car followed behind the motorcycle and that inside that car was one of Kennedy's sons. Clinkscale testified that Kennedy stopped in front of Clinkscale's house and yelled: "we can settle this right now." According to Clinkscale, Kennedy then pulled out a revolver and, together with a man from the car, ran towards Clinkscale's house. Clinkscale then retreated into *Page 2 
his house with his grandson and called police. Clinkscale said that when police arrived he gave them a statement of what had occurred.
 {¶ 6} Clinkscale further testified that after the police left, Kennedy returned a second time in a silver or gray car, and proceeded to point a silver revolver out of the car window and aim it at Clinkscale's front porch. Clinkscale testified that Kennedy "said he was going to kill me." Clinkscale stated that he felt threatened by Kennedy and believed he might shoot him. At the time of this incident, Clinkscale said he was out on his front porch with his four-year-old grandson, and two daughters aged eight and eighteen. After Kennedy threatened him, Clinkscale said he and his children and grandchild ran inside the house to call police. When police arrived, Clinkscale said he made a second report.
 {¶ 7} Youngstown Police Officer Frank Bigowski also testified. He said he responded to both calls made by Clinkscale. He stated Clinkscale reported to him that Kennedy had threatened him on two occasions by driving by and pointing a gun towards the house. He recalled that there may have been several young children present when he came to take the reports. Officer Bigowski did not recall Clinkscale mentioning to him that there were other participants in the menacing incidents, other than Kennedy.
 {¶ 8} Kennedy then testified in his own defense. He stated that he had never seen Clinkscale prior to the fighting incident. He testified that his son told him that Clinckscale struck him in the face with a gun during the affray. After learning this, Kennedy stated he called the police, and made a report. Kennedy claimed that the police then confiscated the gun that Clinkscale had allegedly used to strike Kennedy's son. However, Kennedy also admitted he did not file charges against Clinkscale for the alleged assault; that he instead "just let it go." Kennedy said that this fight occurred about a week before the alleged menacing incidents.
 {¶ 9} In addition, Kennedy admitted that he owns a gun, but stated it was black in color. He also admitted to driving past Clinkscale's house everyday, however, he insisted that he never yelled at Clinkscale or threatened him with a firearm. Further, Kennedy stated that he never sought revenge or retribution against Clinkscale for hitting his son, and that his son's injuries were covered by insurance. *Page 3 
 {¶ 10} At the close of the trial, the trial court found Kennedy guilty of one count of aggravated menacing, as charged. Specifically, the trial court stated:
 {¶ 11} "Well, based upon what I've heard, Mr. Kennedy, it doesn't make sense to me at all for Mr. Clinkscale to have called the police repeatedly, saying specifically what you had done unless you had done it.
 {¶ 12} "There has been no evidence of bias presented, no reason in the world presented to me why Mr. Clinkscale would lie about this. Therefore, Mr. Kennedy, after assessing your credibility and the credibility of the other witnesses, I'm satisfied that the State has presented evidence to convince me beyond a reasonable doubt that you are guilty of aggravated menacing."
 {¶ 13} The case proceeded immediately to sentencing, where the trial court sentenced Kennedy to sixty days in jail, a $500 fine plus court costs, and eighteen months of intensive probation. The trial court also prohibited Kennedy from possessing a firearm and from having any contact with Clinkscale. The judgment entry of sentencing was filed on January 7, 2008.
 {¶ 14} On January 10, 2008, Kennedy filed a timely notice of appeal with this court. The trial court granted Kennedy's motion to suspend the execution of his sentence pending appeal, on the condition that Kennedy post bond, and have no contact with Clinkscale.
 Manifest Weight {¶ 15} Kennedy asserts as his sole assignment of error:
 {¶ 16} "Appellant's conviction violates the United States Constitution Amend. VIII and XIV and the Ohio Constitution Art. I §§ 1, 2, 9 and 16 as the conviction is against the manifest weight of the evidence.
 {¶ 17} Kennedy was convicted of one count of aggravating menacing, pursuant to R.C. 2903.21, which states:
 {¶ 18} "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." *Page 4 
 {¶ 19} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other." Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id.
 {¶ 20} However, a conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. Id. This is so because the trier of fact is in a better position to determine credibility issues, since he personally viewed the demeanor, voice inflections and gestures of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212.
 {¶ 21} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact `unless it is patently apparent that the factfinder lost its way.'" State v. Pallai, 7th Dist. No. 07MA198, 2008-Ohio-6635, at ¶ 31, quoting State v. Woulard, 158 Ohio App.3d 31, 2004-Ohio-3395,813 N.E.2d 964, at ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." State v. Dyke, 7th Dist. No. 99CA149, 2002-Ohio-1152, at *2, citing State v. Gore, 131 Ohio App.3d 197, 201, 722 N.E.2d 125.
 {¶ 22} Thus, to determine whether Kennedy's conviction was against the manifest weight of the evidence, we must weigh the competing evidence presented by both sides at trial. The State's version of the events was supported by the testimony of Clinkscale and Officer Bigowski. Clinkscale testified that sometime before the menacing incidents, he had struck and injured Kennedy's son. Clinkscale said that, as an apparent response, *Page 5 
Kennedy came to his house two times and threatened him with a gun. Clinkscale said that Kennedy told him: "we can settle this right now," and that he would kill him. Clinkscale said he felt threatened by Kennedy and believed Kennedy might shoot him. Officer Bigowski's testimony corroborated Clinkscale's testimony. Officer Bigowski stated that Clinkscale told him that Kennedy came to his house two times and threatened him verbally and with a gun.
 {¶ 23} Kennedy presented a much different version of the events. He stated that although he would drive past Clinkscale's house everyday, he never yelled at Clinkscale or threatened him with a firearm. He also claimed that he did not seek retribution against Clinkscale for the injuries Clinkscale caused to his son.
 {¶ 24} Neither of these versions is particularly unbelievable. In the end, however, the resolution of this case turned on credibility determinations made by the fact-finder. Without the benefit of observing the witnesses at trial, we must defer to those determinations. It is not "patently apparent" that the fact-finder lost her way in this case.
 {¶ 25} It seems that the reasonable inferences which may be drawn from the evidence tend to favor the State. Both Kennedy and Clinkscale testified that Clinkscale had struck and injured Kennedy's son prior to the menacing incidents at issue. Kennedy admitted passing Clinkscale's home daily but denied the threatening behavior testified to by Clinkscale. Thus, it was reasonable for the trial court to believe that Kennedy threatened Clinkscale because Clinkscale injured Kennedy's son.
 {¶ 26} In his appellate brief, Kennedy takes issue with the trial court's statement that there was no evidence of Clinkscale's bias presented at trial. Kennedy argues that since he made a police report against Clinkscale for injuring his son, and because the police allegedly confiscated Clinkscale's gun as a result of that earlier affray, that Clinkscale had reason to fabricate the menacing charges. However, Kennedy testified at trial that he chose not to pursue any criminal charges against Clinkscale for hitting his son. The fact that Kennedy made a police report against Clinkscale does not necessarily indicate that Clinkscale was biased or had reason to fabricate the menacing allegations. Further, Clinkscale testified that he does not own any firearms because he is under a *Page 6 
disability. Determining who to believe hinged on a credibility determination that is best left to the trier of fact.
 {¶ 27} Kennedy also takes issue with the fact that the State did not present any corroborating witness testimony, aside from that of Officer Bigowsky, to support Clinkscale's version of the events. He insists this shows that his conviction was against the manifest weight of the evidence.
 {¶ 28} However, the evidence at trial indicated that two of the three witnesses to Kennedy's threatening behavior were very young children. Admittedly, Clinkscale testified that his eighteen-year-old daughter witnessed the second menacing incident. However, the State's decision not to use her as a witness does not mean Kennedy's conviction was against the manifest weight of the evidence. The determination of any inferences that could be drawn from the lack of corroborating witness testimony is up to the fact-finder. See State v. Atwater (June 11, 1999), 2d Dist. No. CA 17454, at *1.
 {¶ 29} Accordingly, Kennedy's sole assignment of error is meritless. The trial court did not clearly lose its way so as to create a manifest miscarriage of justice, and the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs. *Page 1