[Cite as *State v. Parish*, 2014-Ohio-1410.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA00141 |
| ANDREW SHAWN PARISH | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Canton Municipal
Court, Case No. 2013CRB00874

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 31, 2014

APPEARANCES:

For Plaintiff-Appellee                             For Defendant-Appellant

JOSEPH MARTUCCIO                              AARON KOVALCHIK
CANTON LAW DIRECTOR                    116 Cleveland Avenue N.W.
TYRONE D. HAURITZ                            Canton, OH 44702
CANTON CITY PROSECUTOR
ANTHONY RICH
ASSISTANT CITY PROSECUTOR
218 Cleveland Avenue S.W.
Box 24218
Canton, OH 44701-4218

*Gwin, P.J.*

{¶1} Appellant Andrew Shaw Parish ["Parish"] appeals his conviction and sentence for one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree after a jury trial in the Canton Municipal Court.

### Facts and Procedural History

{¶2} Parish and Nakita Morgan were in a relationship for approximately a year and a half. A child, M. P. was born out of that relationship. Parish was present in the hospital room when M.P. was born. She was given Parish's last name. When M.P. was born, Morgan was married to another man who was incarcerated at the time.

{¶3} On February 16, 2013, Morgan went out for a night of drinking and dancing with her friend, Chelsi Early. Parish did not join them. He agreed to watch the baby, M.P., for the night at his residence.

{¶4} Morgan returned home at around 3:00 a.m. on February 17, 2013. Chelsi Early drove Morgan's vehicle because Morgan believed she was too intoxicated to drive. Upon arrival, Early parked the vehicle along the sidewalk in front of Morgan's house. Parish arrived before they exited their vehicle, parking his vehicle alongside theirs. He exited his vehicle, approached the passenger side of Morgan's vehicle, and pulled Morgan out by her neck. After pulling her out of the vehicle, he slammed her to the ground and choked her.

{¶5} The assault stopped for a brief period while Parish moved his vehicle from the street onto Morgan's front lawn. Parish again exited his vehicle and again approached Morgan. He threw her to the ground once more and choked her. Chelsi Early intervened and Parish stopped his attack.

{¶6} Morgan headed toward her residence and Parish followed. Early left the scene to get help from Morgan's mother.

{¶7} While inside Morgan's residence, Parish demanded Morgan's cell phone. She refused, and he became angry. Morgan moved away from him and headed toward the back door in the kitchen. Parish followed and poured a bottle of liquor on her head. The alcohol sent a burning sensation to her eyes and impaired her vision. After Morgan went to the ground, Parish grabbed her by her hair and pulled her, causing her head to strike the door of the refrigerator. They wrestled on the ground until Morgan escaped out the back door.

{¶8} While Morgan was outside trying to get the attention of her neighbor, the police arrived. They spoke with Parish but did not arrest him that night. A criminal complaint was filed at a later date.

{¶9} On March 11, 2013 Parish, was charged with one count of Domestic Violence, a first-degree misdemeanor. A jury trial proceeded on June 20, 2013. Evidence was presented by the state in the way of five witnesses, i.e., the victim, an eyewitness, and three Canton City Police Officers. Parish presented no evidence.

{¶10} At the conclusion of the evidence, the jury found Parish guilty of Domestic Violence. The trial court sentenced Parish to 180 days in the Stark County Jail with all but 90 suspended.

### Assignment of Error

{¶11} Parish raises one assignment of error,

{¶12} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

***Analysis***

**{¶13}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

**{¶14}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on *its effect in inducing belief*." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶15}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a

"'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶16} To find Parish guilty of domestic violence the trier of fact would have to find that he knowingly caused or attempted to cause physical harm to a family or

household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶17} R.C. 2919.25(F)(1) provides that "Family or household member" includes "the natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(a)(iii).

{¶18} At issue in this case is whether Morgan was a natural parent of any child of whom Parish is the other natural parent or is the putative other natural parent. Parish claims that because Nakita Morgan was married to another man at the time of M.P.'s birth, he cannot be considered the natural or putative natural parent of M.P.

{¶19} In the case at bar, the victim Nakita Morgan testifed that she and Parish were in a relationship for approximately a year and a half. A child, M. P., was born out of that relationship. Parish was present in the room when M.P. was born. She was given Parish's last name. When M.P. was born, Morgan was married to another man who was incarcerated at the time.

{¶20} This evidence, if believed, is sufficient to establish the elements necessary to prove Morgan, the alleged victim, was Parish's "family or household member." *State v. Mills*, 2nd Dist. Montgomery No. 21146, 2005–Ohio–2128, ¶15–18; *State v. Bently*, 2nd Dist. Montgomery No. 19743, 2004–Ohio–2740, ¶8; *State v. Smith,* 12th Dist. Warren No. CA2011-01-002, 2011-Ohio-2346, ¶14.

{¶21} We find that Parish's objections go to the weight rather than the sufficiency of the evidence. The parties are, of course, at liberty to attack the evidence and to seek to demonstrate through cross-examination or the introduction of other

evidence that Parish is not the biological father of M.P. The jury can then decide what weight to give to the conflicting testimony or evidence.

{¶22} In the case at bar, Parish did not testify or present evidence to challenge Morgan's testimony that he was M.P.'s father.

{¶23} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Parish committed the crime of domestic violence. We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Parish's conviction.

{¶24} Parish further points to inconsistencies in Morgan and Early's testimony and characterizes such as "false testimony," rendering the evidence insufficient to convict him of domestic violence.

{¶25} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶26}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶27}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for

resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

A fundamental premise of our criminal trial system is that "the jury is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the "part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

**{¶28}** *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶29}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541,

*quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost their way nor created a miscarriage of justice in convicting Williams of the charges.

**{¶30}** Based upon the foregoing and the entire record in this matter, we find Parish's conviction was not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony and of the witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Parish's' guilt.

**{¶31}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each crime beyond a reasonable doubt.

**{¶32}** Parish's sole assignment of error is overruled.

{¶33} For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur