[Cite as *State v. Lee*, 2012-Ohio-2856.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | W. Scott Gwin, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 11-CA-0076 |
|  | : |  |
|  | : |  |
| JASON LEE | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |



CHARACTER OF PROCEEDING: Criminal Appeal from Licking County
Court of Common Pleas Case No.
10-CR-0618

JUDGMENT: Affirmed In Part, Reversed and
Remanded In Part

DATE OF JUDGMENT ENTRY: June 22, 2012

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KENNETH W. OSWALT                    ROBERT BANNERMAN
Prosecuting Attorney                     P.O. Box 77466
20 S. Second Street, Fourth Floor     Columbus, Ohio  43207-0098
Newark, Ohio  43055

*Edwards, J.*

{¶1} Appellant, Jason Lee, appeals a judgment of the Licking County Common Pleas Court convicting him of obstructing official business (R.C. 2921.31(A)) with a firearm specification (R.C. 2929.14(D), 2941.145), aggravated menacing (R.C. 2903.21(A)), and possession of marijuana (R.C. 2925.11(A)(C)(3)(a)). He was sentenced to three years incarceration on the firearm specification to run consecutively to all other sentences, six months incarceration for obstructing official business, and 180 days incarceration for aggravated menacing to run concurrently with the sentence for obstructing official business. Appellee is the State of Ohio.

## STATEMENT OF FACTS AND CASE

{¶2} On September 23, 2010, officers from the Licking County Sheriff's Department went to appellant's home at 9151 Linville Road, Newark, Ohio, to serve a writ of possession. Deputies spoke to appellant and explained that his property had been sold at sheriff's sale and he needed to make arrangements to vacate. They agreed on October 11, 2010 as the date by which appellant would vacate, but appellant stated that he was going to hire an attorney to have the sale set aside.

{¶3} Deputies did not return on October 11, 2010, because a court action was pending to review the propriety of the sale. However, on October 20, 2010, the court denied a stay on the writ of possession. Deputies again spoke with appellant at his home on October 25, 2010, and told him he needed to vacate on October 27, 2010.

{¶4} At about 9:30 a.m. on October 27, deputies arrived at appellant's home. Appellant was standing on the front sidewalk. He yelled something to the officers about having sold his house to someone else and told them to leave. Appellant then ran in

the front door of the home. Officers followed appellant to the front porch but appellant would not come out or let them in the house. He yelled through the front door that he was not coming out.

{¶5} Deputies returned to their vehicle to telephone the buyers to inform them not to come to the property that morning as planned. They called appellant's attorney, and also called their supervisor, Captain Bruce Myers. Deputy Tim Caldwell went around to the back door to attempt to talk to appellant. The blinds covering the French doors on the back porch flew open and the faces of appellant and another man, later identified as Karl Weatherby, appeared against the window. The two men began yelling and screaming at Dep. Caldwell. The corners of their mouths were "full of white stuff" from yelling and screaming and they were spitting on the window.

{¶6} When Captain Bruce Myers arrived, he went to the back door to speak with appellant. He advised appellant through the door that appellant's attorney was on his way. Capt. Myers saw an arm and a hand come around the side of the blinds covering the door. The hand was holding a pistol.

{¶7} Much of the staff of the Sheriff's Department had been dispatched to an incident involving a van, containing a pipe bomb, which crashed into a church following a pursuit earlier that morning. At least 25 employees of the Sheriff's Department and fire department were dispatched to appellant's home, including the SWAT team and the hostage negotiating team.

{¶8} Appellant would not speak to the hostage negotiators through a "throw phone," which is the preferred method of communicating so that all communications can be monitored by the police. However, he agreed to speak to Misty VanBalen through a

cell phone. VanBalen faxed the paperwork concerning the sale of the house to appellant so they both had all the relevant court papers. Appellant repeatedly told her that he wanted to die, that he was going to kill whoever entered the residence first and then kill himself. He also told her that he and Weatherby had a plan to kill each other. He told her that he could see the officers through the window and could take them out. He intended to die and take out as many people as he could. Appellant would speak calmly with her for awhile, then start yelling and hang up. He told her that he had shown a gun to an officer and knew he was in trouble, he still had the gun, and he wasn't going to put it down. He told her he had other guns in the house, including rifles which Weatherby knew how to handle because he had been in the military. He said that he wanted the media to be there when he died.

{¶9} At about 4:15 p.m., Weatherby agreed to come out unarmed and speak to the media. Appellant and Weatherby were both concerned about how their cats were going to get fed if they surrendered. VanBalen agreed to feed the cats. Appellant came out of the house at 6:30 p.m.

{¶10} During a subsequent search of the house, officers found marijuana. They also found three firearms in a cabinet in a basement office, a loaded firearm in a garage, a revolver in the first floor dining room, a rifle leaning against an end table in the living room, and a rifle in the corner of a first floor bathroom.

{¶11} Appellant admitted to police that he grabbed a firearm and went to the back door. He did not deny brandishing a weapon at Captain Myers and indicated that he had a weapon with him. He also admitted that he planned to shoot the first person through the door and then shoot himself.

{¶12} Appellant was indicted by the Licking County Grand Jury with obstructing official business, inducing panic, aggravated menacing, possession of criminal tools, possession of marijuana, and two firearm specifications. The first firearm specification, applicable to counts one and two, alleged that appellant had one or more firearms on or about his person or under his control or that of an accomplice. The second firearm specification, also applicable to counts one and two, alleged that appellant or an accomplice displayed, brandished, indicated that they possessed a firearm or used it to facilitate the offense.

{¶13} Following jury trial in the Common Pleas Court, appellant was acquitted of inducing panic. The jury could not reach a verdict on the charge of possession of criminal tools. Appellant was convicted of all other counts. The trial court merged the firearm specifications and sentenced appellant to a term of incarceration of three years, to be served prior to and consecutively to the remainder of his sentence. He was sentenced to six months incarceration for obstructing official business, and 180 days incarceration for aggravated menacing to run concurrently with the sentence for obstructing official business.

{¶14} Appellant assigns three errors on appeal:

{¶15} "I. WAS THE JURY'S FIREARM SPECIFICATION SPECIAL FINDING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} "II. THE DEFENDANT'S SENTENCING ENTRY WAS DEFECTIVE BY MERGING FIREARM SPECIFICATIONS FOR A COUNT IN WHICH HE WAS FOUND NOT GUILTY.

**{¶17}** "III. THE TRIAL COURT IMPROPERLY ALLOWED PREJUDICIAL CUMULATIVE FIREARM EVIDENCE TO GO TO THE JURY, AND EXCLUDED EXCULPATORY MENTAL STATE CIVIL FORECLOSURE ERRORS TO BE PRESENTED TO THE JURY."

I

**{¶18}** Appellant argues that the finding on the firearm specification was against the manifest weight of the evidence.  He argues that because Capt. Myers did not see the face of the person who brandished the weapon, there was a 50/50 chance it was Karl Weatherby and not appellant who brandished the firearm.

**{¶19}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶20}** R.C. 2929.14(D) provides for a three year term of incarceration if the offender had a firearm "on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense."

**{¶21}** Misty VanBalen testified that appellant told her he knew was in trouble and that he had shown a gun to an officer.  He told her that he still had the gun and wasn't

going to put it down and that he had other guns. He told her he intended to shoot the first person who walked through the door and then kill himself. Detective Brock Harmon interviewed appellant after the incident. Appellant admitted that he grabbed a firearm and took it with him to the back door and that he planned to shoot the first person who walked through the door and then shoot himself. Numerous firearms were found in a search of the house, including several on the first floor. Captain Myers identified the pistol that was displayed to him through the back door.

**{¶22}** The judgment on the firearm specification is not against the manifest weight of the evidence.

**{¶23}** The first assignment of error is overruled.

II

**{¶24}** In his second assignment of error, appellant argues that the court erred in merging the firearm specifications on both counts one and two, as he was not convicted of count two, inducing panic.

**{¶25}** The court's sentencing entry states in pertinent part:

**{¶26}** "The Court finds that the defendant has been convicted of Obstructing Official Business (Count 1), a violation of O.R.C. Section 2921.31(A), a felony of the fifth degree; Firearm Specification to Counts 1 and 2, in violation of O.R.C. Section 2929.14(D) and 2941.145; Aggravated Menacing (Count 3), in violation of O.R.C. Section 2903.21(A), a first degree misdemeanor; and Possession of Marijuana (Count 5), in violation of O.R.C. Section 2925.11(A)(C)(3)(a), a minor misdemeanor.

**{¶27}** "For reasons stated on the record, and after consideration of the factors under Ohio Revised Code Section 2929.12, the Court also finds that prison is mandatory.

**{¶28}** "The Court finds that the separate firearm specifications to Counts 1 and 2 merge.

**{¶29}** "It is, therefore, ordered that the defendant serve a state mandatory prison term of three (3) years on the firearm specification to be served prior to and consecutively with a term of six (6) months on Count 1 at the Orient Reception Center. Further, the Court imposes a term of 180 days in jail on Count 3 and orders it run concurrently with the sentence of Count 1."

**{¶30}** The jury convicted him of count one, obstructing official business, and both firearm specifications attached to this count.  The court merged these specifications for sentencing, but incorrectly stated that the specification was attached to Counts 1 and 2.  Because appellant was acquitted on Count Two, the firearm specification was only applicable to Count One.

**{¶31}** Appellant argues that he should be resentenced.  We disagree.  While the entry should be corrected to remove the reference to the firearm specification on Count 2, appellant's sentence was not affected by this error.  Appellant was convicted of the firearm specification on Count 1, and accordingly was sentenced to three years incarceration on the specification.

**{¶32}** The second assignment of error is sustained.

III

{¶33} In his third assignment of error, appellant argues that the court erred in admitting evidence of firearms found in the house in addition to the weapon identified as the one brandished to Captain Myers.  He also argues the court erred in excluding evidence that there were errors made in his civil foreclosure case because such evidence was relevant to his state of mind.

{¶34} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 51 N.E.2d 343, paragraph 2 of the syllabus (1987). An abuse of discretion implies that the court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶35} Appellant argues that the evidence of other firearms found in the residence should have been excluded under Evid. R. 403:

{¶36} "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶37} "(B) Exclusion discretionary.  Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

{¶38} While appellant objected before trial and during the testimony of Det. Marc Brill to the admissibility of any gun but the gun displayed to Capt. Myers, appellant failed to renew the objection when the exhibits were admitted, and stated that he had no objection to the admission of the exhibits.  Tr. 396.   All of the weapons were included in

these exhibits. Generally, when a party fails to renew an objection at the time exhibits are admitted into evidence, that party waives the ability to raise the admission on appeal absent plain error. *Odita v. Phillips*, 10th Dist. 09AP-1172, 2010-Ohio-4321, ¶56, citing *Nicula v. Nicula,* 8th Dist. No. 84049, 2009-Ohio-2114. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶39} Appellant argues that the 9 mm Beretta and the Smith & Wesson semiautomatic were locked in a cabinet in the basement. He further argues that evidence that one of the rifles was capable of piercing body armor was unfairly prejudicial and confused the jury.

{¶40} The testimony shows that these weapons were found in a cabinet in the basement, but the evidence does not support appellant's claim that the cabinet was locked. Further, the Beretta was identified by Captain Myers as the weapon brandished at the back door, which he recognized by the after-market aiming laser attached to the weapon. Throughout the incident, appellant made the hostage negotiator aware that they had rifles and Weatherby knew how to handle them from being in the military. He informed VanBalen that he could see officers through the window and could take them out. Evidence of the firearms was relevant to proving the firearm specification. Further, the obstructing official business charge was elevated to a felony pursuant to R.C. 2921.31(B) because the offense created a risk of physical harm to any person. The fact

that appellant and Weatherby were armed with multiple kinds of weapons, several of which were found on the first floor of the home, was relevant to proving that appellant created a risk of harm to the officers he threatened throughout the course of the incident.

**{¶41}** Appellant has not demonstrated error in admission of the firearms.

**{¶42}** Appellant next argues that the court erred in excluding evidence that he believed the court made a mistake in ordering the sheriff to execute the writ because there were errors in the process by which the writ of possession was obtained.

**{¶43}** Appellant's claim is essentially one of defense of property. Ohio law does not provide appellant the right to defend his property by threatening to shoot police officers who are there to execute a writ of possession issued by a court of law simply because he believes there were errors made in the civil proceeding that led to the sheriff's sale of his property.

**{¶44}** In *State v. Burns*, 2nd Dist. No. 22674, 2010-Ohio-2831, the appellant argued that her conviction for obstructing official business was against the manifest weight of the evidence because the officer whom she impeded in his efforts to search her mother's home was there unlawfully, without a search warrant. The court rejected this argument, holding:

**{¶45}** "Appellant contests that Officer Wolpert was performing 'lawful duties' when he entered her mother's house prior to obtaining a search warrant. Although an unlawful entry may result in the exclusion of evidence, 'absent bad faith on the part of a law enforcement officer, an occupant cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances.' *State v.*

*Stevens,* Morgan App. No. 07-CA-0004, 2008-Ohio-6027, ¶ 37, quoting *State v. Paumbaur* (1984), 9 Ohio St.3d 136, 138. There is no evidence of 'bad faith' on the part of Officer Wolpert. He explained that his reason for entering the home was to ensure the safety of all concerned and to ensure that evidence could not be removed or destroyed. Even if Officer Wolpert's entry had been unlawful under these particular circumstances, absent evidence of bad faith, Appellant was not justified in obstructing his efforts to secure the residence."  Id. at ¶19.

**{¶46}** In the instant case, appellant's proffered evidence did not demonstrate in any way that the police were acting in bad faith.  The evidence suggested that as of October 27, 2010, the deed to the home was still in appellant's name.  However, as noted by the court, nothing in appellant's proffered testimony demonstrated that the sheriff acted in bad faith in executing the writ of possession.  While it might be uncommon for a writ to issue prior to the deed being recorded, the sheriff's department had a writ of possession and a judgment of the court, dated October 20, 2010, denying appellant's motion for a stay on the writ of possession.  The court did not err in excluding evidence that the writ issued before the deed was recorded and before the full purchase price was paid.

**{¶47}** Further, while a homeowner may say almost anything to officers in an attempt to persuade them not to enter, the Fourth Amendment does not grant a homeowner the right to use deadly force to resist an unlawful entry.  *State v. McCoy,* 2nd Dist. No. 22479, 2008-Ohio-5648, ¶19.  In the instant case, appellant's right to resist entry, even if the police were acting on bad faith, did not extend to a threat of deadly force and show of a firearm.

**{¶48}** The third assignment of error is overruled.

**{¶49}** The judgment of the Licking County Common Pleas Court is affirmed in all respects except the merger of the firearm specification on Count Two.  This cause is remanded to that court for the limited purpose of correcting the judgment to remove the reference to a firearm specification on Count Two, on which appellant was acquitted.


By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/r0227

[Cite as *State v. Lee*, **2012-Ohio-2856**.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JASON LEE | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 11-CA-0076 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is reversed solely as to the reference to the firearm specification on Count Two, and remanded for the limited purpose of correcting the judgment entry. In all other respects the judgment is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES