[Cite as *State v. Wetherby*, 2013-Ohio-3442.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12-CA-69 |
| KARL C. WETHERBY | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING: Criminal appeal from the Licking County Court of Common Pleas, Case No. 10CR00616

JUDGMENT: Affirmed in part; reversed in part; and Remanded


DATE OF JUDGMENT ENTRY: August 1, 2013

APPEARANCES:

For Plaintiff-Appellee

KENNETH OSWALT
29 S. 2nd Street
Newark, OH 43055

For Defendant-Appellant

DAVID SAMS
Box 40
W. Jefferson, OH 43162

*Gwin, P.J.*

{¶1} Appellant, Karl C. Wetherby ["Wetherby"], appeals a judgment of the Licking County Common Pleas Court convicting him of obstructing official business (R.C. 2921.31(A)) with a firearm specification (R.C. 2929.14(D), R.C. 2941.145), inducing panic with a firearm specification (R.C. 2917.31(A)(3)(4)((a). R.C. 2941.145), and aggravated menacing (R.C. 2903.21(A).

*Facts and Procedural History*

{¶2} On September 23, 2010, officers from the Licking County Sheriff's Department went to Jason Lee's home at 9151 Linville Road, Newark, Ohio, to serve a writ of possession[1]. Deputies spoke to Lee and explained that his property had been sold at sheriff's sale and he needed to make arrangements to vacate. They agreed on October 11, 2010 as the date by which Lee would vacate, but Lee stated that he was going to hire an attorney to have the sale set aside. Wetherby is a friend of Lee's who was staying on the property in a camper in the driveway. (1T. at 244).

{¶3} Deputies did not return on October 11, 2010, because a court action was pending to review the propriety of the sale. However, on October 20, 2010, the court denied a stay on the writ of possession. Deputies again spoke with Lee at his home on October 25, 2010, and told him he needed to vacate on October 27, 2010.

{¶4} At about 9:30 a.m. on October 27, deputies arrived at Lee's home. Lee was standing on the front sidewalk. He yelled something to the officers about having sold his house to someone else and told them to leave. Lee then ran in the front door of

---

[1] See, *State v. Lee,* 5th Dist. No. 11-CA-0076, 2012-Ohio-2856.

the home. Officers followed Lee to the front porch but Lee would not come out or let them in the house. He yelled through the front door that he was not coming out.

{¶5} Deputies returned to their vehicle to telephone Lee's attorney, and called their supervisor, Captain Bruce Myers. Deputy Tim Caldwell went around to the back door to attempt to talk to Lee. The blinds covering the French doors on the back porch flew open and the faces of Lee and another man, later identified as Wetherby, appeared against the window. The two men began yelling and screaming at Deputy Caldwell. The corners of their mouths were "full of white stuff" from yelling and screaming and they were spitting on the window.

{¶6} When Captain Bruce Myers arrived, he went to the back door to speak with the pair. He advised Lee through the door that Lee's attorney was on his way. Captain Myers saw an arm and a hand come around the side of the blinds covering the door. The hand was holding a pistol.

{¶7} Much of the staff of the Sheriff's Department had been dispatched to an incident involving a van, containing a pipe bomb, which crashed into a church following a pursuit earlier that morning. At least 25 employees of the Sheriff's Department and fire department were dispatched to Lee's home, including the SWAT team and the hostage negotiating team.

{¶8} Lee would not speak to the hostage negotiators through a "throw phone," which is the preferred method of communicating so that all communications can be monitored by the police. However, he agreed to speak to Misty Van Balen through a cell phone.

{¶9} Lee repeatedly told her that he wanted to die, that he was going to kill whoever entered the residence first and then kill himself. He also told her that he and Wetherby had a plan to kill each other. He told her that he could see the officers through the window and could take them out. He intended to die and take out as many people as he could. Lee would speak calmly with her for a while, then start yelling and hang up. During the telephone negotiations, Wetherby can be heard yelling in the background. Wetherby is speaking so loudly that the deputy told Lee to "tell him to shut up. I can't hear you." (1T. at 244-245). Throughout the negotiations, Lee was asking Wetherby for his advice. Several times Lee halted the discussions in order to seek Wetherby's advice. (1T. at 245).

{¶10} Lee and Wetherby informed the negotiating deputies that they wanted to speak to the news media. Accordingly, a meeting was arranged with a local news team. Lee was afraid to leave the residence. At about 4:15 p.m., Wetherby agreed to come out unarmed and speak to the media. Wetherby was taken into custody without incident at the conclusion of the interview with the news team. Lee came out of the house at 6:30 p.m.

{¶11} During a subsequent search of the house, officers found three firearms in a cabinet in a basement office, a loaded firearm in a garage, a revolver in the first floor dining room, a rifle leaning against an end table in the living room, and a rifle in the corner of a first floor bathroom.

{¶12} The jury convicted Wetherby on all counts. At sentencing, the trial court merged the firearm specifications. The court further merged the Obstructing Official Business contained in count one with the Inducing Panic charge found in count two. The

state elected to proceed on count one for sentencing. The court sentenced Wetherby to an aggregate sentence of three years and six months.

*Assignments of Error*

{¶13} Wetherby raises four assignments of error:

{¶14} "I. THE CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE AND WERE OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶15} "II. APPELLANT'S ACTIONS WERE PRIVILEGED UNDER OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS AND THUS COULD NOT FORM THE BASIS FOR CRIMINAL LIABILITY THEREUNDER.

{¶16} "III. THE JURY INSTRUCTIONS WERE PREJUDICIALLY INSUFFICIENT UNDER OHIO LAW AND THE STATE & FEDERAL CONSTITUTIONS.

{¶17} "IV. APPELLANT WAS PREJUDICIALLY DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STATE AND FEDERAL CONSTITUTIONS."

I.

{¶18} In his first assignment of error, Wetherby argues the jury's findings of guilty are against the manifest weight of the evidence and was not supported by sufficient evidence.

{¶19} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶20}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶21}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**1. Obstructing Official Business.**

**{¶22}** R.C. 2921.31, Obstructing Official Business provides,

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

**{¶23}** In the case at bar, Licking County Sheriff s officers were attempting to enforce a Writ of Possession resulting from a foreclosure action. No evidence was

presented during trial that Wetherby had an ownership interest in the subject property. No evidence was presented that Wetherby had any cognizable interest in the property pursuant to any written agreement. The only evidence presented is that Lee permitted Wetherby to stay in a camper on the property. No evidence was presented as to the ownership of the camper. Thus, the evidence presented during trial indicates that Wetherby was no more than a guest of Lee.

{¶24} In the case at bar, Lee was to vacate the premises taking whatever he would like. The new owners gave Lee and additional thirty days to remove the remainder of his property. (1T. at 116). Further, Lee was aware that his application for a stay had been denied. (Id. at 120 -121). The evidence in this case included copies of the Writ of Possession as well as the civil court's judgment entry refusing to stay that Writ. Those documents clearly show that Lee was a party to that foreclosure action. Accordingly, Wetherby as a mere guest was not privileged to use force or threaten the use of force to resist the Licking County Sheriff's officers from enforcing a Writ of Possession resulting from a foreclosure action.

{¶25} In the case at bar, the state presented evidence that, at the very least, Wetherby aided and abetted Lee in preventing the deputies from the performance of their lawful duties.

{¶26} Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. *See, State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Mendoza*, 137 Ohio

App.3d 336, 342, 738 N.E.2d 822 (2000), *quoting State v. Stepp*, 117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342 (1997).

**{¶27}** R.C. 2923.03 provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense.

**{¶28}** R.C. 2923.03(F) states, "A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in *State v. Perryman* (1976), 49 Ohio St. 2d 14, *vacated in part on other grounds sub nom, Perryman v. Ohio* (1978), 438 U.S. 911. The court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment as a principal. Id. The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. Id. Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. *Perryman,* supra at 27, 28.

*State v. Payton*, 8th Dist. Nos. 58292, 58346, 1990 WL 48952(Apr. 19, 1990).

**{¶29}** R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. *United States v. McGee* 529 F.3d 691, 695 (6th Cir 2008); *State v. Herring*, 94

Ohio St.3d 246, 251 762 N.E.2d 940, 949(2002); *State v. Keenan*, 81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946(1998); *State v. Templeton*, 5th Dist. No. 2006-CA-33, 2007-Ohio-1148, ¶ 63.

**{¶30}** In this case, while inside the home, Lee displayed a firearm to the officers outside. The pair further made threats to shoot the officers and themselves. The deputies remained on the scene from 9:30 a.m. to at least 6:30 p.m.

**{¶31}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that, at the very least, Wetherby aided and abetted Lee in committing the crime of obstructing official business. We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support Wetherby's conviction.

**2. Inducing Panic.**

**{¶32}** R.C. 2917.31 Inducing Panic, provides,

(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:

(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;

(2) Threatening to commit any offense of violence;

(3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.

{¶33} At the time of the offense, a violation of this section that results in economic harm of $500.00 or more but less than $5,000.00 inducing panic was classified as a fifth degree felony. R.C. 2917.31(C)(4).[2]

{¶34} R.C. 2917.31(E)(1)(b) specifically includes within "economic harm", "All costs incurred by the state or any political subdivision as a result of, or in making any response to, the criminal conduct that constituted the violation of this section or section 2917.32 of the Revised Code, including, but not limited to, all costs so incurred by any law enforcement officers, firefighters, rescue personnel, or emergency medical services personnel of the state or the political subdivision."

{¶35} Officer Jay Cook testified that the total cost to respond to the situation that Lee and Wetherby brought about was over $7,000. (1T. at 323.) This figure was documented in an accounting of overtime for 29 officers who were involved in some capacity or another with this matter, as well as jail personnel who had to be called in to "cover" for jail deputies that were on the SWAT Team or had additional duties associated with this 10-hour standoff.

{¶36} In *State v. Kristofferson*, 1st Dist. Hamilton App. No. C-010322, 2002-Ohio-712, the defendant appealed his R.C. 2917.31(A)(3) inducing panic conviction and argued that the evidence was insufficient to show the serious public inconvenience or alarm element. In *Kristofferson*, the defendant and his wife had argued and he stated that he would be better off dead. He then retrieved a handgun and locked himself in a bedroom. His wife and son left the home and called the police. The police requested the

---

[2] This statue was amended September 30, 2011 to increase the amounts to $1,000.00 and $7,500.00, respectively.

defendant to come outside and after a brief two or three minute exchange, the defendant surrendered.

{¶37} The appellate court concluded that the evidence failed to show that the defendant's conduct caused serious public inconvenience or alarm. Instead, "[h]is conduct involved his family and occurred within the privacy of his own home. It was not the kind of conduct that the inducing-panic statute was intended to prohibit, such as causing an airport terminal or other public place to be evacuated by sending the customers to scurry for the exits." The court further determined that "[t]he officers, acting in their official capacity, * * * could not have been inconvenienced within the contemplation of R.C. 2917.31(A), simply because they had responded to his residence as their duties required them to do."

{¶38} In *State v. Campbell,* 195 Ohio App.3d 9, 2011-Ohio- 3458, 958 N.E.2d 622(1st Dist.), although eight police officers were required to respond to a domestic dispute when the defendant refused to open the door to his apartment, there was no evidence the other tenants in the building were stirred, and the police officers could not be inconvenienced as they were acting in their official capacity.

{¶39} In *State v. Isham*, 1st. Dist. Hamilton App. No. C-020065, 2002-Ohio-5815, the First District reversed the trial court's judgment of conviction on an inducing-panic charge against the defendant because the state had not presented sufficient evidence to support the elements of inducing panic. The court explained that there had been no evidence of an alleged offense of violence since there was no evidence that the defendant had threatened anyone or pointed the gun at anyone. In addition, the court went on to state that there had likewise been no evidence that any offense of

violence (if there had been one) caused the evacuation of the building, because the alleged offense of violence occurred after the building had already been evacuated. *Accord, In re J.C.* 11th Dist. Lake App. No. 2012-L-083, 2013-Ohio-1292(Mar. 29, 2013), ¶20 ("mere public awareness of an event is not sufficient to satisfy the element of serious public inconvenience or alarm; there must be some type of disruption, discomfort, distress, or fear caused by one or more of the three predicate actions found in R.C. 2917.31(A)(1)-(A)(3).").

**{¶40}** In the case at bar, there is no evidence that Wetherby's actions in concert with Lee or alone caused serious public inconvenience or alarm. Officers acting in their official capacity could not have been inconvenienced within the contemplation of R.C. 2917.31(A), simply because they had responded to the residence, as their duties required them to do.

**{¶41}** We hold, therefore, that the state failed to meet its burden of production regarding each element of the crimes and, accordingly, there was insufficient evidence to support Wetherby's conviction for inducing panic.

**{¶42}** Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, give an appellate court the power to affirm, reverse, or modify the judgment of an inferior court. Accordingly, the conviction and sentence on Counts Two, Inducing Panic is reversed, and this case is remanded for proceedings in accordance with our opinion and the law.

### 3. Aggravated Menacing.

**{¶43}** Wetherby was also convicted of aggravated menacing. R.C. 2903.21, aggravated menacing provides,

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.

**{¶44}** The crime of aggravated menacing is triggered by a threat that intimidates or causes fear or apprehension by the recipient. *State v. Schwartz*, 77 Ohio App.3d 484, 602 N.E.2d 671(12th Dist. 1991). Such threats are not among the class of utterances that are protected by the First Amendment. *Mozzochi v. Borden*, 959 F.2d 1174 2nd Cir. 1992); *United States v. Khorrami*, 895 F.2d 1186(7th Cir. 1990); United States v. Bellrichard, 994 F.2d 1318(8th Cir. 1993).

**{¶45}** In *State v. Millikin*, 1st Dist. Hamilton App. Nos. C030825, C-030826, 2004-Ohio-4507, the defendant was angry that motorists would move and drive around the barricades placed in front of his home because of road construction. The defendant parked his and another person's vehicles in front of his house, blocking the street. The police were called, and the defendant was told to move the vehicles. The defendant was angry that the police were not enforcing the closing of the road. The state presented evidence that when the police arrived for the second time, the defendant appeared at the front door of his house, angry and intoxicated, carrying a shotgun and having a handgun tucked in the waistband of his pants. The appellate court upheld the defendant's conviction for aggravated menacing, stating that "Even though Millikin never pointed a gun at the police officers and did not verbally threaten them, in the entire context of the evening, it was reasonable to conclude that the police officers felt

threatened and were fearful that Millikin would attempt to cause serious physical harm to them." Id. at ¶23.

**{¶46}** In *State v. Terzo*, 12th Dist. Butler App. No. CA2002-08-194, 2003-Ohio-5983, a Fairfield police officer responded to a report that a female was brandishing a firearm and trying to set fire to clothing she had thrown in the street. When the officer arrived, he observed the female sitting on the front porch holding a shotgun. The officer testified that the female raised the shotgun and aimed it at the officer. He testified that he drew his service revolver, fearing that the female intended to shoot. The female went back inside the house, put the gun down, and surrendered herself immediately. The appellate court upheld Terzo's conviction for aggravated menacing, stating that "The threat need not be verbalized; rather, the threat can be implied by the offender's actions. *City of Niles v. Holloway* (Oct. 3, 1997), Trumbull App. No. 96-T-5533, 1997 Ohio App. LEXIS 4517, 1997 WL 665974 *citing State v. Hoaglin* (Mar. 25, 1993), Van Wert App. No. 15-92-15, 1993 Ohio App. LEXIS 1718, 1993 WL 85643. And finally, while appellant [Terzo] also argues that she would have been unable to carry out the threat because the gun was not loaded, neither the intent nor the ability to carry out the threat is an element of the offense. *Dayton v. Dunnigan* (1995), 103 Ohio App.3d 67, 658 N.E.2d 806." Id. at ¶18.

**{¶47}** In the case at bar, evidence was presented that the deputies had concerns for their safety. First, officers retreated from the front of the home where they were exposed when co-defendant Lee brandished a firearm. The officer who observed the gun being brandished retreated to a "safer location." He also yelled to his fellow officer that he saw a gun and told him to get off the porch. Moreover, a tactical, or

SWAT team, was called in and a squad/medic was kept on stand-by throughout the ordeal.

**{¶48}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that, at the very least, Wetherby aided and abetted Lee in committing the crime of aggravated menacing. We hold, therefore, that the state met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support Wetherby's conviction.

**{¶49}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶50}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the

evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶51} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

{¶52} We find that this is not an "'*exceptional* case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Wetherby of the charges of obstructing official business with a firearm specification and aggravated menacing.

II.

**{¶53}** In his second assignment of error, Wetherby incorporates the arguments he previously made with respect to this first assignment of error. He contends in this assignment of error that his conduct was "privileged."

**{¶54}** Wetherby's claim is essentially one of defense of property. Ohio law does not provide appellant the right to defend his property by threatening to shoot police officers who are there to execute a writ of possession issued by a court of law simply because he believes there were errors made in the civil proceeding that led to the sheriff's sale of his property. *State v. Lee,* 5th Dist. No. 11-CA-0076, 2012-Ohio-2856, ¶ 43.

**{¶55}** In *State v. Burns,* 2nd Dist. No. 22674, 2010–Ohio–2831, the appellant argued that her conviction for obstructing official business was against the manifest weight of the evidence because the officer whom she impeded in his efforts to search her mother's home was there unlawfully, without a search warrant. The court rejected this argument, holding:

> Appellant contests that Officer Wolpert was performing "lawful duties" when he entered her mother's house prior to obtaining a search warrant. Although an unlawful entry may result in the exclusion of evidence, "absent bad faith on the part of a law enforcement officer, an occupant cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances." *State v. Stevens,* Morgan App. No. 07–CA–0004, 2008–Ohio–6027, ¶ 37, *quoting State v. Paumbaur* (1984), 9 Ohio St.3d 136, 138. There is no evidence of "bad faith" on the part of Officer Wolpert. He explained that his reason for

entering the home was to ensure the safety of all concerned and to ensure that evidence could not be removed or destroyed. Even if Officer Wolpert's entry had been unlawful under these particular circumstances, absent evidence of bad faith, Appellant was not justified in obstructing his efforts to secure the residence." *Id.* at ¶ 19.

**{¶56}** In the case at bar, there is absolutely no evidence that any of the officers acted in bad faith. To the contrary, the evidence unequivocally established that the sheriff's department had a writ of possession and a judgment of the court, dated October 20, 2010, denying Lee's motion for a stay on the writ of possession. Further, while a homeowner may say almost anything to officers in an attempt to persuade them not to enter, the Fourth Amendment does not grant a homeowner the right to use deadly force to resist an unlawful entry. *State v. McCoy,* 2nd Dist. No. 22479, 2008–Ohio–5648, ¶ 19. In the instant case, Wetherby's right to resist entry, even if the police were acting in bad faith, did not extend to a threat of deadly force and show of a firearm. *Lee, supra* at ¶ 47.

**{¶57}** Wetherby's second assignment of error is overruled.

III.

**{¶58}** In his third assignment of error, Wetherby claims the trial court erred in not giving complete jury instructions. Specifically, Wetherby contends that it was plain error for the court not to instruct the jury on privilege, self-defense and imminent fear of serious physical harm with respect to aggravated menacing.

**{¶59}** The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v.*

*Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462(3rd Dist. 1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983) Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

**{¶60}** Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**{¶61}** Wetherby did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. Based upon his failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention

for consideration, we must address this assignment under the plain error doctrine. Therefore, for this court to reverse Wetherby's convictions, we must find that the trial court's procedure regarding its jury instructions was prejudicial. Crim.R. 52(B).

> [A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus,* 560 U.S. 258, 130 S.Ct. 2159, 2164,176 L.Ed.2d 1012 (Internal quotation marks and citations omitted). The Ohio Supreme Court pertinently addressed when structural error analysis should be used in *State v. Perry,*

> We emphasize that both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. See *Hill*, 92 Ohio St.3d at 199, 749 N.E.2d 274; *Johnson*, 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should

foster rather than thwart judicial economy by providing incentives (and not

disincentives) for the defendant to raise all errors in the trial court-where,

in many cases, such errors can be easily corrected.

101 Ohio St.3d 118, 802 N.E.2d 643, 2004-Ohio-297, ¶23. Thus, the defendant bears

the burden of demonstrating that a plain error affected his substantial rights and, in

addition that the error seriously affect[s] the fairness, integrity or public reputation of

judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123

L.Ed.2d 508(1993); *State v. Perry,* 101 Ohio St.3d at 120, 802 N.E.2d 643. Even if the

defendant satisfies this burden, an appellate court has discretion to disregard the error.

*State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002); *State v. Long*, 53 Ohio

St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus*; Perry,* supra, at 118,

802 N.E.2d at 646.

{¶62} Under the circumstances of the case at bar, there is nothing in the record

to show that Wetherby was prejudiced. As we discussed in our disposition of

Wetherby's second assignment of error, neither Wetherby nor Lee's actions were

privileged and neither was entitled to use force.

{¶63} Aggravated menacing does not require an imminent fear of serious

physical harm as suggested by Wetherby. Neither the intent of a defendant to carry out

his threat nor his ability to do so are elements of the offense of aggravated menacing.

*Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806(2nd Dist. 1995). Even a

conditional threat can constitute a violation of the menacing laws. *State v. Collie*, 108

Ohio App.3d 580, 582, 671 N.E.2d 338(1st Dist. 1996). What is necessary to establish

the offense of menacing is the victim's subjective belief that the defendant can cause

physical harm to herself, her immediate family, or her property. *State v. Klempa*, 7th Dist. Belmont App. No. 01-BA-63, 2003-Ohio-3482, ¶ 24.

**{¶64}** Wetherby's third assignment of error is overruled.

IV.

**{¶65}** In his fourth assignment of error, Wetherby argues that he was denied effective assistance of counsel. Specifically, Wetherby claims his trial counsel was ineffective for failing to request jury instructions on privilege and failing to argue that the evidence was insufficient.

**{¶66}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶67}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

**{¶68}** In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice warranting reversal must be such that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would "reasonably likely been different" absent the errors. *Strickland*, 466 U. S. 695, 696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, supra; *Bradley*, supra.

{¶69} The claims raised by Wetherby do not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Wetherby cites in support of his claim that he was denied effective assistance of counsel, we find Wetherby was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Wetherby has failed to demonstrate that there exists a reasonable probability that, had trial counsel requested a jury instruction on privilege and argued insufficient evidence as he has suggested the result of the trial would have changed. As we have noted, any error in the procedure employed by trial counsel was harmless beyond a reasonable doubt.

{¶70} Wetherby's fourth assignment of error is overruled.

{¶71} The judgment of the Licking County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J., and

Baldwin, J., concur;

Farmer, J., dissents

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. CRAIG R. BALDWIN

WSG:clw0722

*Farmer, J., dissenting*

**{¶72}** I respectfully dissent from the majority's view in Assignment of Error I as to the lack of evidence that appellant violated R.C. 2917.31, inducing panic.

**{¶73}** I would conclude that the jury, as the trier of facts, had sufficient evidence to determine that appellant's actions violated R.C. 2917.31. Deputy Misty Van Balen testified while she was speaking to Lee on the cell phone, appellant was yelling in the background and "that person's, you know, yelling the same thing***'this isn't going to end well.' " T. at 244. Deputy Van Balen explained that at times she spoke directly to appellant on the cell phone. T. at 245-246. She testified to the following (T. at 246):

"they [appellant and Lee] would tell us that we needed to leave, and if they didn't leave, that somebody was going to die. They intended to die that day; that if the case didn't - - if we didn't close things the way they intended, then they weren't leaving the house except for in body bags. Repeatedly told us that they were, exceptionally, that they were going to kill the first officers through the door, and then they were going to kill each other or they were going to kill themselves. Mr. Wetherby told me at one point in time during the conversation he would rather see Mr. Lee dead than leave the house.

**{¶74}** Deputy Van Balen further testified (T. at 247-248):

They would tell me that they could, at various times, they could see persons that were stationed on the perimeter, and they had told me that they were well armed, and that they intended to shoot the first three officers through the door and then they were going to shoot themselves.

They told me if we gassed the house, they were going to just start shooting at random, and then they were going to shoot themselves. They told me, at one time, that they had a plan to shoot each other. That was going to be their suicide pact, and they just kept reiterating that people were going to die, and they were going to take as many as they could.

**{¶75}** Deputy Randy Thorp testified to "the instability of the scene and the danger that it presented to the public in that area along Linnville Road and so forth." T. at 173.

**{¶76}** I would find appellant's actions, coupled with the presence of weapons in appellant's possession, to be sufficient to meet the quantum of proof necessary for a conviction of R.C. 2917.31.

**{¶77}** In addition, there was ample evidence of the economic harm under R.C. 2917.31(E)(1)(b). T. at 322-323; State's Exhibit 14.

**{¶78}** I would affirm appellant's conviction for inducing panic.

_____
HON. SHEILA G. FARMER

[Cite as *State v. Wetherby*, 2013-Ohio-3442.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                           :
                                        :
            Plaintiff-Appellee          :
                                        :
                                        :
-vs-                                    :       JUDGMENT ENTRY
                                        :
KARL C. WETHERBY                        :
                                        :
                                        :
            Defendant-Appellant         :       CASE NO. 12-CA-69


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Licking County Court of Common Pleas is affirmed in part and reversed in part, and

this case is remanded for proceedings in accordance with our opinion and the law.

Costs divided equally between the parties.


                                        _____
                                        HON. W. SCOTT GWIN


                                        _____
                                        HON. SHEILA G. FARMER


                                        _____
                                        HON. CRAIG R. BALDWIN